**Barbara MERTIK, Plaintiff–Appellant,**

v.

**Linda BLALOCK; Joseph Tal, Jr.; City of Parma Heights; Greenbrier Figure Skating Club; Winterhurst Figure Skating Club; City of Lakewood; Lakewood School District Board of Education, Defendants–Appellees.**

No. 91–4071.

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1992.

Decided Jan. 15, 1993.

Rehearing and Rehearing En Banc Denied March 17, 1993.

Timothy N. Toma (argued and briefed), Michael P. Lavigna, Euclid, OH, for Barbara Mertik.

Leo R. Ward, Tim S. Williams (argued and briefed), Ward & Associates, C. Anthony Stavole, Stavole & Miller, Cleveland, OH, for Linda Blalock, Joseph A. Tal, Jr., City of Parma Heights.

Donald L. Reiman (briefed), Cassidy & Mottl, Parma Heights, OH, for Greenbrier Figure Skating Club.

George Glavinos, Jr., Westlake, OH, for Winterhurst Figure Skating Club.

Roger D. Tibbetts, Lakewood, OH, Richard G. Lillie, Corso, Lillie & Kelly, Cleveland, OH, Michael E. Murman, Lakewood, OH, for City of Lakewood.

Susan C. Hastings, Arthur A. Kola, Squire, Sanders & Dempsey, Cleveland, OH, for Lakewood School Dist. Bd. of Educ.

Before: KENNEDY and SILER, Circuit Judges; and JOINER, Senior District Judge.[*]

JOINER, Senior District Judge.

Plaintiff, Barbara Mertik, appeals the dismissal of her federal civil rights claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. Plaintiff's suit was removed from state court to the

[*] Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

United States District Court for the Northern District of Ohio. Following the dismissal of the one count asserting federal constitutional claims, the district court remanded the balance of the suit to state court. This appeal concerns only the propriety of the dismissal of the federal claims. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## I.

Plaintiff Mertik brought this action against defendants, two private ice skating clubs, two municipalities which owned or operated the ice rinks used by the clubs, and two individual employees of one of the municipalities. Mertik is a professional ice skating instructor who provides figure skating lessons to students at the two skating rinks. After being denied access to the defendant cities' rinks, Mertik brought this action under 42 U.S.C. § 1983 alleging that the defendants violated her procedural and substantive due process rights as guaranteed by the Fifth and Fourteenth Amendments to the federal Constitution.

Following the institution of this appeal, Mertik voluntarily dismissed her claims against one of the defendant ice skating clubs and the defendant city which allegedly owned or operated the rink at which that club's students were taught.[1] Consequently, we address only the facts and law pertinent to the remaining defendants.

■■■ Whether the district court properly dismissed Mertik's civil rights claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law subject to de novo review. *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir.1987). The factual allegations of the complaint must be accepted as true, *Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc.*, 854 F.2d 135, 136 (6th Cir.1988), *cert. dismissed*, 490 U.S. 1087, 109 S.Ct. 2461, 104 L.Ed.2d 982 (1989), and construed in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

It is against this standard that we review the following allegations, all accepted as true, and all taken exclusively from Mertik's second amended complaint.

### Plaintiff's Allegations

Barbara Mertik has been a professional figure skating coach for 25 years. She contracts independently to provide skating lessons to students at the defendant Greenbrier Figure Skating Club at a rink owned by defendant city of Parma Heights. Mertik's students purchase ice time either from the Greenbrier Club or directly from Parma Heights. Mertik has complied with all conditions required of her to maintain what she terms are "staff privileges" to teach at the Greenbrier Club. Based on the course of conduct and custom in the trade, Mertik is entitled to maintain these staff privileges as long as she fulfills her obligations to the club.

Approximately 15 students contracted with Mertik for figure skating lessons for the summer months of 1991, and purchased ice time directly from Parma Heights. Mertik and the students contracted for lessons in reliance on representations by the Greenbrier Club and Parma Heights that Mertik would be provided privileges at Greenbrier. Further, Mertik and the students were induced by the Greenbrier Club and Parma Heights to rely on these promises and representations.

Mertik was charged with gross sexual imposition by a former student. The allegations on which the charge was premised were false, and the charge was set aside nolle prosequi in Parma Municipal Court. No other such allegations had ever been made against Mertik in her 25 years as a professional figure skating coach. Mertik's students and their parents were aware of the criminal charge that had been

---

1. The claims against defendants Winterhurst Figure Skating Club, City of Lakewood and Lakewood Board of Education were voluntarily dismissed.

brought against her, but recognized that the charge was unfounded. They wanted Mertik to continue to provide skating lessons during the summer months of 1991.

On July 9, 1991, when Mertik attempted to take the ice at Greenbrier to give a lesson, she was ordered off the ice by defendant Linda Blalock, the manager of the rink and an employee of defendant Parma Heights. Blalock threatened to have Mertik arrested if she went on the ice to teach. According to Blalock, this order was given under the authority of defendant Joseph A. Tal, Jr., Parma Heights' Director of Recreation. Mertik claims that Blalock's order was given despite Mertik's right to maintain privileges at the Greenbrier Club and her students' rights to select her as their coach. Neither Blalock nor Tal had the lawful authority to prohibit Mertik from providing lessons on ice time bought and paid for by her students.

Blalock publicized to third persons false and unsubstantiated allegations of child abuse about Mertik without privilege to do so and in reckless disregard of their falsity. Moreover, both Blalock and Tal falsely publicized to third parties that Mertik failed to fulfill her commitments to the Greenbrier Club, knowing these statements to be false, or in reckless disregard of their falsity.

*Procedural History; Plaintiff's Constitutional Claims*

Mertik's complaint was initially filed in Cuyahoga County Common Pleas Court. Mertik claimed that defendants Blalock, Tal, the City of Parma Heights, and the Greenbrier Figure Skating Club (1) tortiously interfered with contracts between Mertik and her students; (2) breached their contracts with Mertik; (3) were promissorily estopped from denying Mertik "staff privileges" to teach at the city's rink on the basis of representations made to Mertik on which she reasonably relied; and (4) slandered her.

Mertik's fifth count was brought under 42 U.S.C. § 1983 and alleged that the defendants violated her right to substantive and procedural due process by deprivation of constitutionally protected property and liberty interests, and that defendants violated her right to equal protection of the laws, contrary to the Fifth and Fourteenth Amendments to the federal Constitution. Mertik alleges in this count that the defendants' actions were taken under color of state law, have operated to deny her employment opportunities, have stigmatized her, and have harmed her reputation. Mertik claims that she was entitled to prior notice and an opportunity to be heard before her privileges at Greenbrier were revoked and the accusations against her were publicized. She further claims that defendants' actions were neither random nor unauthorized, and that it was not unfeasible or impractical for the defendants to have provided notice and hearing prior to depriving her of protected property and liberty interests.

On the basis of Mertik's federal constitutional law claims in count 5, defendants removed the action to the federal court. Upon review of Mertik's complaint, the district judge ordered Mertik to show cause why count 5 should not be dismissed for failure to state a claim on which relief could be granted. Mertik briefed the question, and filed a motion for leave to file a second amended complaint. The district court considered the allegations in the proposed second amended complaint, but then dismissed count 5 under Fed.R.Civ.P. 12(b)(6). The balance of the case was remanded to state court.

*District Court's Ruling*

In a memorandum opinion and order, the district court addressed each of Mertik's constitutional claims.[2] The district court found that Mertik enjoyed no constitutionally protected property interest in continued employment such that her employment could not be terminated without a pre-deprivation hearing. A property interest in continued employment, the district court held, is accorded only to public employees who may not be discharged at will:

---

**2.** Mertik does not appeal the district court's holding that she failed to state a claim for violation of her right to the equal protection of the laws.

Mertik is clearly not a public employee. Although she is given staff privileges at public ice rinks, she does not allege that she is anything but an 'at will' employee, hired by her students. Thus, Mertik fails to make out a claim that any constitutionally protected property interest has been taken from her by the defendants. (App. at 22; citing *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). The district court further held that even if Mertik had been deprived a protected property interest, no failure of due process had occurred because (1) when deprivation of property is the result of the random and unauthorized act of a state employee, a pre-deprivation hearing is impracticable and thus not required; and (2) section 1983 actions are foreclosed in such circumstances unless adequate post-deprivation state law remedies are unavailable. Mertik's state tort claims were found to demonstrate the availability of post-deprivation remedies. The district court also found this analysis applicable to Mertik's claim of deprivation of liberty without due process on the basis of a "governmentally imposed stigma," without expressly holding whether Mertik had pled a cognizable liberty interest.

Mertik also claimed that defendants' actions towards her were violative of her substantive due process rights. The district court found that this was not so:

> While Mertik's allegations, if true, describe opprobrious conduct, it is not conduct that shocks the conscience and does not rise to the level of a constitutional tort. Mertik should certainly be allowed to pursue a remedy if she has suffered damages, but that remedy is not to be found under § 1983.

### II.

Mertik claims on appeal that the district court's dismissal of count 5 of her second amended complaint was improper because her factual allegations establish that (1) she was deprived of constitutionally protected property and liberty interests without adequate procedural due process, and (2) that defendants' actions deprived her of substantive due process rights.

■ Mertik's arguments require an understanding of her relationship with defendants. Local governments can be subject to suit under 42 U.S.C. § 1983. *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Section 1983 provides individuals with a private cause of action when constitutional deprivations occur under color of state law. *Id.* Count 5 of Mertik's complaint broadly asserts that "defendants" acted under color of state law in depriving Mertik of her constitutional rights. Yet Mertik's complaint makes no allegation that defendant Greenbrier Figure Skating Club acted in concert with any state actors. There is no allegation of conspiracy or agreement between Greenbrier and the defendant city and/or its employees. There is no allegation that any policy under which Greenbrier may have operated was an exercise of power specifically authorized by the state.[3] *Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

■ It is clear to us that no set of facts which could be proven consistent with the allegations in Mertik's complaint would entitle her to relief under 42 U.S.C. § 1983 against Greenbrier. We therefore hold that the dismissal of count 5 of Mertik's complaint against Greenbrier was appropriate. *Kerasotes*, 854 F.2d at 136. We now examine Mertik's claims against the City of Parma Heights, Blalock and Tal.[4]

---

**3.** Indeed, it appears that Mertik's original and first amended complaints limited her federal claims to defendants Parma Heights, Blalock and Tal; Greenbrier was not, apparently, even named in count 5. At no time prior to the filing of her reply brief in this court did Mertik address herself to the question of *Greenbrier's* liability, as distinct from that of the other defendants. Even in her reply brief, Mertik fails to present any authority requiring the reversal of the district court's ruling.

**4.** Mertik must eventually satisfy the district court that her claims against these defendants are "pursuant to official municipal policy of some nature." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. Mertik's allegations, though presenting a close case, are sufficient to withstand a Rule

## III.

Section 1983 of Title 42 "provides a remedy for deprivations of rights secured by the Constitutions and laws of the United States...." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). Mertik relies on the Fourteenth Amendment which forbids state actors to "deprive any person of life, liberty or property without due process of law[.]" U.S. Const. amend. XIV, § 1. In order to maintain her due process claims, Mertik must allege the existence of some facts which, if proven, would establish that defendants deprived her of a constitutionally protected property or liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 569–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

*Procedural Due Process—Property Interest*

The federal Constitution does not create property interests. "Rather it extends various procedural safeguards to certain interests 'that stem from an independent source such as state law.'" *Leis v. Flynt*, 439 U.S. 438, 441, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979) (per curiam) (citing *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). To have a property interest in a benefit,

> a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

In determining whether Mertik has pled a protected property interest, we look to all applicable precedents, not just those cases involving the termination of public employment. The Supreme Court has not been quite so parsimonious in recognizing protected property interests as the district court and defendants maintain. The Court's discussion in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), of the circumstances in which a city employee may have a property right in continued employment must be read in the

context of the factual situation of that case: a claim by a *city* employee that he was a permanent employee entitled to a hearing prior to being fired. Nothing in that case restricts due process rights to public employees only.

A case that is more instructive of the type of contractual interest entitled to protection from governmental interference is *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987) (plurality opinion). In that case, Roadway challenged, on due process grounds, the Secretary of Labor's authority to require the reinstatement of an employee discharged by the company for cause, where the Secretary had found reasonable cause to believe that the employee had actually been discharged in violation of the Surface Transportation Assistance Act (STAA) in retaliation for refusing to operate an unsafe vehicle. At issue in the case was whether the Secretary was required to provide Roadway with an evidentiary hearing prior to issuing an order requiring the employee's reinstatement, and whether the Secretary had deprived Roadway of procedural due process by failing to provide Roadway with the substance of the evidence in support of the employee's claim.

Prior to addressing the adequacy of the procedures mandated by the STAA, the plurality opinion acknowledged that its first step was to identify a property or liberty interest entitled to due process protection. The property right asserted by Roadway was the right derived from the collective bargaining agreement between Roadway and its employees' union, the right to discharge employees for cause. The plurality accepted the Secretary of Labor's concession that this contractual right to discharge an employee for cause constituted a property right protected by the Fifth Amendment. *Roadway Express*, 481 U.S. at 260–61, n. 2, 107 S.Ct. at 1747, n. 2. The plurality then went on to determine the process that was due to Roadway, determining that the STAA violated due process

---

12(b)(6) attack, however. "The complaint is ultimately about an *official* action, not the random act of a subordinate." *Macene v. MJW,*

*Inc.,* 951 F.2d 700, 705 (6th Cir.1991) (emphasis in original).

guarantees by failing to require that the employer be provided with the substance of the evidence supporting the employee's claim. Significantly, two other members of the Court would have found broader due process violations, based on governmental interference with this property right. *See* opinions of Brennan, J., and Stevens, J., 481 U.S. at 269 and 273, 107 S.Ct. at 1751 and 1753, respectively.

■ *Roadway Express* makes clear that a private contractual right can constitute a property interest entitled to due process protection from governmental interference under federal constitutional law. Whether or not the contractual right at issue arose in a broad employment context is clearly not dispositive.

Mertik, for her part, argues that her status as an instructor at Parma Heights' rink is analogous to that of a physician who is given staff privileges to treat patients at public hospitals, and relies on those cases recognizing staff privileges as a form of property right entitled to due process protections. The analogy is appealing at first blush. It must be noted, however, that staff privileges are not bestowed with "property right" status automatically, as Mertik seems to assume. Rather, the characterization of staff privileges as property is dependent upon whether the hospital granting the privileges has undertaken not to terminate the physician's privileges without cause and/or some form of process. *See Lowe v. Scott,* 959 F.2d 323, 335–36 (1st Cir.1992), where the court reviewed staff privileges cases in a number of circuits,[5] identifying some as cases in which the hospital undertook not to revoke privileges without appropriate process, and others as cases in which the physicians' privileges could not be terminated without just cause. Implicit in these cases is the understanding that federal constitutional law

does not *create* the right alleged to have been violated, but only affords procedural due process to protect rights that arise from other sources, such as state law.

■ Under Ohio law, the right to contract is a property right:

> The right to contract is specifically guaranteed by Section 1, Article 1 of the Ohio Constitution and is within the protection of the Fourteenth Amendment to the United States Constitution. It is a property right. Similarly, an interest in a contract has been held to be a property interest.

*Joseph Bros. v. Brown,* 65 Ohio App.2d 43, 415 N.E.2d 987, 990 (1979) (citations omitted).

Whether or not the law of Ohio expressly confers property right status on contract rights is not controlling for our analysis. However, the fact that it has done so lends considerable weight to Mertik's position,[6] and it matters not that the alleged contract at issue is not written, *id.,* 415 N.E.2d at 990–91, and that it may be founded in the law of implied contract. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

Mertik alleges that she entered into contracts with 15 students to instruct them in figure skating for the summer months of 1991. The term of the contract, though imprecise, is not indefinite. Moreover, she alleges that the students had no wish to terminate their contracts with her, even after the report of the sexual misconduct charge was circulated. It appears to us, therefore, that Mertik has sufficiently alleged the existence of valid contracts with her students, in force at the time that she was allegedly ordered off the ice by defendant Blalock, with no breach or termination

---

**5.** In *Yashon v. Hunt,* 825 F.2d 1016, 1022 n. 2 (6th Cir.1987), *cert. denied,* 486 U.S. 1032, 108 S.Ct. 2015, 100 L.Ed.2d 602 (1988), this court discussed due process requirements in the context of a case in which the parties stipulated that the staff privileges constituted a property right.

**6.** In *G.M. Engineers and Assoc. v. West Bloomfield Township,* 922 F.2d 328, 330–31 (6th Cir.

1990), this court held that where Michigan law recognized contract rights as property rights, the plaintiff had satisfactorily alleged a taking of property based upon the defendant township's refusal to approve a real estate development proposal which operated to defeat the plaintiff's contract rights with the owners of the land.

contemplated by the immediate parties to the contracts.

■ To the extent that acquiescence by the Greenbrier Skating Club was necessary to the performance of Mertik's contracts with her students, Mertik has sufficiently alleged a contract right to continue her instruction. She alleges that pursuant to the course of conduct and custom in the trade, she was entitled to maintain her staff privileges so long as she fulfilled her obligations to the Greenbrier Club. She further alleges that she did, in fact, comply with all of the conditions required of her to maintain her staff privileges. Ohio law recognizes that facts and circumstances surrounding what may be an at-will agreement "should be considered to ascertain if they indicate what took place, the parties' intent, and the existence of implied or express contractual provisions which may alter the terms for discharge." *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150, 154 (1985) (citing *Henkel v. Educational Research Council*, 45 Ohio St.2d 249, 344 N.E.2d 118 (1976)). It appears to us at this early stage of the case that Mertik has sufficiently alleged the existence of a contract right with the defendant Greenbrier Club.

Finally, we must determine whether Mertik alleged an enforceable right to perform the contracts at issue at the ice rink owned by the defendant City of Parma Heights, for it is the city's refusal to allow her to teach her students at that precise location which is at the center of this law suit.

Mertik alleges that she and her students contracted for lessons to be given at the city's rink in reliance on representations by the city that Mertik would be provided staff privileges at its rink. Mertik and her students, it is alleged, were induced to rely on the promises and representations of the city. She further alleges that she had complied with all of the conditions required of her to maintain her staff privileges, and that course of conduct and custom in the trade dictated that her staff privileges were to continue. To secure their lesson times, the students purchased ice time directly from the city. Finally, Mertik alleges that despite all of this, the city's employees, Blalock and Tal, refused to allow her to perform her contracts with her students and ordered her off the city's rink.

■ Ohio recognizes a cause of action for estoppel against municipal corporations based on representation of its officers or agents. *Andres v. City of Perrysburg*, 47 Ohio App.3d 51, 546 N.E.2d 1377 (1988); *Shapely, Inc. v. City of Norwood Earnings Tax Bd. of Appeals*, 20 Ohio App.3d 164, 485 N.E.2d 273 (1984). While the law of estoppel does not apply to cases involving things ultra vires, *Shapely, Inc.*, 485 N.E.2d at 276, the allegations in the complaint indicate that the defendants were within their authority in operating an indoor skating rink and allowing a program of figure skating instruction at the rink. *E.g.*, Ohio Rev.Code Ann. § 755.12 *et seq.*

■ Based on all of this, we hold that Mertik alleged a sufficient contractual interest in continuing to teach at the city's rink to constitute a property interest deserving of protection under the Fourteenth . Amendment. In making this determination, we are mindful of the Supreme Court's admonition that "the significance of the private interest in employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985) (citations omitted).

In a very general sense, it is Mertik's means of livelihood that is allegedly threatened by the defendants' actions in this case. Not all cases in which a plaintiff's "means of livelihood" are negatively affected will implicate protected property interests. Recognized property rights must be abridged before a federal due process claim will lie. However, Mertik has alleged a sufficient contractual right to continue to enjoy her particular means of livelihood, and it simply is not clear that Mertik would be unable to present a set of facts consistent with her allegations which would entitle her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The district court's

dismissal for failure to state a claim for violation of procedural due process rights based on the alleged infringement of a property right must be reversed.

### Procedural Due Process—Liberty Interest

Relying primarily upon *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), Mertik asserts that she has been deprived of a constitutionally protected liberty interest founded upon her right to live and ply her trade free from governmentally imposed stigma. Mertik alleges that Blalock and Tal "spread and publicized to third persons the false allegations about Mertik without privilege to do so and in reckless disregard of their falsity." These "false and unsubstantiated allegations of child abuse," Mertik alleges, "have denied [her] of employment opportunities, stigmatized her and harmed her reputation." The district court made no express holding on whether Mertik had pled a cognizable liberty interest, instead finding that, had she done so, she had nonetheless been afforded sufficient post-deprivation process in the form of state law tort remedies and that no federal cause of action was presented.

Our analysis must focus on the precise "liberty" interest which Mertik claims was abridged. There is no claim that Mertik was physically constrained in any way, nor any assertion that she was denied a right which has special and independent constitutional protection, *e.g.,* the right to free speech. Rather, Mertik's claim is essentially that her freedom to pursue her chosen profession under the conditions she had been working was curtailed, in part through injury to her reputation caused by the false and stigmatizing publications allegedly made by defendants Blalock and Tal.

Injury to reputation, standing alone, is not a liberty interest protected by the Fourteenth Amendment. *Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). The Supreme Court has stressed that 42 U.S.C. § 1983 is not an avenue for redress of any and all possible tort claims against the government, and that there exists "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 702, 96 S.Ct. at 1161. Rather, the Court has limited the scope of an actionable liberty interest deprivation to situations involving termination of government employment or the loss of a legal right or status previously enjoyed under state or federal law. *Id.* at 710–11, 96 S.Ct. at 1164–65. In other words, when a plaintiff alleges the loss, infringement or denial of a government right or benefit previously enjoyed by him, coupled with communications by government officials having a stigmatizing effect, a claim for deprivation of liberty without due process of law will lie. Defamatory publications, standing alone, do not rise to the level of a constitutional claim, no matter how serious the harm to reputation. *Id.* at 712, 96 S.Ct. at 1165. Thus, *Paul* held that a police chief's dissemination of fliers naming "active shoplifters" did not deprive the plaintiff named in the fliers of a liberty interest because the fliers, however stigmatizing, did not deprive the plaintiff of a governmental right. "*[Paul v.] Davis* holds that defamation alone will not suffice, but must accompany the alteration of a recognized interest or status created by the state." *Naegele Outdoor Advertising Co. v. Moulton,* 773 F.2d 692, 702 (6th Cir.1985), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1639, 90 L.Ed.2d 184 (1986).

That the Supreme Court has narrowly construed the nature and scope of protected liberty interests is nowhere more evident than in *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). There the Court refused to recognize a protected liberty interest in favor of a clinical psychologist who resigned from employment at a federal hospital and who, three weeks later, was the subject of an extremely negative employment reference by his former supervisor at the hospital. The reference had the effect of foreclosing employment positions at other federal facilities, a loss "particularly tragic because [Siegert's] professional specialty appears to

be one very difficult to practice outside of government institutions." *Siegert,* —— U.S. at ——, 111 S.Ct. at 1801 (Marshall, J., dissenting). Nonetheless, the Court refused to recognize the loss of the protected liberty interest because the alleged defamation at issue was not "uttered incident to the termination of Siegert's employment by the hospital, since he voluntarily resigned from his position at the hospital, and the letter was written several weeks later." *Id.,* —— U.S. at ——, 111 S.Ct. at 1794. Relying on *Paul,* the Court held that a stigma to reputation that affects only future employment opportunities does not give rise to a protected liberty interest. Because the only interest impaired was that in *future* employment, rather than an interest in employment presently enjoyed, Siegert had failed to establish the violation of a constitutional right. *Siegert,* —— U.S. at ——, 111 S.Ct. at 1794.

Three justices dissented in *Siegert,* branding the majority's account of *Paul v. Davis* a "gross mischaracterization:"

> The *Paul* Court rejected a *private* employee's generalized claim of loss of future employment prospects where the plaintiff made no showing of a loss of government employment or future government employment; indeed, no governmental benefit or entitlement was at risk in *Paul.* . . . Therefore, *Paul* truly was a case where the only interest the plaintiff was asserting was injury to reputation.

*Siegert,* —— U.S. at ——, 111 S.Ct. at 1798 (Marshall, J., dissenting) (emphasis in original).

■ *Siegert* thus underscores two important points: (1) a plaintiff asserting a claim for deprivation of liberty without due process must allege the loss of a governmental right, benefit or entitlement; and

(2) the loss must occur at the same time as the claimed stigmatizing publication.

■ Our discussion of Mertik's claimed property interest leads us to conclude that *Paul* and *Siegert* do not preclude Mertik from procedural due process protections based on an asserted deprivation of liberty. We have recognized that Mertik has pled a sufficient private contractual entitlement, vis-a-vis her students and the Greenbrier Club, to teach. With respect to her claim that she was entitled to continue to teach at the defendant city's rink, we have found that Mertik has made sufficient allegations to state a claim of estoppel against the city, Blalock and Tal. While the general right which Mertik claims was terminated—the right to teach her Greenbrier students at the city's rink—was not a purely governmental right, neither was it purely private. Logic dictates that we view the alleged stigmatizing statements in this case as having been made in the context of the termination of a mutually beneficial business relationship in which the governmental benefit, the right to use the city's rink, played an integral role.

We also find that Mertik's allegations, taken in the light most favorable to her, show that, roughly contemporaneously with banning her from the city's rink, Blalock and Tal had communicated to third persons false allegations without privilege to do so, the existence of "false allegations of child abuse,"[7] and that Mertik had failed to fulfill her commitments to Greenbrier. We believe that Mertik has sufficiently alleged that the reasons for the city's decisions to ban her from the rink were publicly disseminated. These allegations meet the applicable pleading requirements. *Lee v. Western Reserve Psychiatric Habilitation Center,* 747 F.2d 1062, 1069 (6th Cir.1984).

---

**7.** Defendants claim that, at the time Mertik was banned from the skating rink, the charges pending against her in state court had not yet been dismissed. This fact, they claim, makes dissemination of "false" statements an impossibility, such that no liberty interest is affected. This claim assumes that defendants reported only that Mertik had been *charged* with sexual misconduct, rather than that she *committed* the offense. We are not engaged in a resolution of a defamation claim. We seek to determine only whether facts which could be proven in accordance with the allegations would entitle Mertik to relief. Whether the stated claim can be proved conclusively is an issue for resolution by some process other than dismissal under Rule 12(b)(6).

**1364**

In sum, we find that Mertik has alleged sufficient facts to implicate a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. As in every phase of our discussion of Mertik's claims, we are bound by the posture of this case. We accept her allegations as true and construe them in the light most favorable to her. The losses which Mertik claims to have suffered are both tangible, in the form of her interest in performing her contractual obligations to her students, and intangible, in the alleged loss of employment opportunities resulting from the stigmatizing effect of being branded a child abuser after a 25–year unblemished record as a professional figure skating instructor. We find that Mertik has stated a claim for deprivation of a liberty interest, and that dismissal under Rule 12(b)(6) would not have been proper.

*The Process Due Mertik*

"[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (emphasis in original) (citing *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981) and *Carey v. Piphus,* 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978)). Thus, we must determine what process is guaranteed to Mertik by the Constitution.

Mertik maintains that she was constitutionally entitled to notice and a hearing before the defendants took action to curtail her right to teach at the city's rink. Defendants, for their part, maintain that Mertik had the burden of pleading and proving the inadequacy of state remedies, and argue that she failed to meet the former and cannot meet the latter.[8] The district court found that the failure to grant remedies in addition to the post-deprivation remedies granted by the state did not constitute a violation of due process. For the reasons that follow, we find that the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) must be reversed.

■ "The fundamental requirement of due process is the right to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). We recognize that pre-deprivation hearings are not universally required, however. Where the state action complained of consists of, *e.g.,* unpredictable and tortious or otherwise random and unauthorized acts of state employees, the Constitution does not require the state to do the impossible and predict when the loss will occur.

> It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as an action under "color of law," is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.

*Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981).

In such a case, the due process inquiry is limited to the adequacy of post-deprivation remedies provided by the state, and the burden is on the plaintiff to demonstrate the inadequacy of those remedies. *Zinermon,* 494 U.S. at 128–30, 110 S.Ct. at 984–85. In *Parratt,* prisoners who had complained of the negligent loss of mail packages by prison employees who had not followed the normal procedures for receipt of mail were held to be without a claim for deprivation of property without due pro-

---

8. As elsewhere, defendants misperceive the nature of an inquiry under Fed.R.Civ.P. 12(b)(6). Arguments to the effect that, *e.g.,* a hearing would not have changed any of the parties' positions, or that the alleged damage to Mertik's reputation was more likely the result of the mere fact that she was charged with sexual misconduct rather than anything defendants did, are based on speculation and conjecture, and would not even be appropriate for consideration had the district court ruled on a Fed. R.Civ.P. 56 motion for summary judgment. Clearly, they are inappropriate in the procedural context of this case.

cess of law because of the adequacy of post-deprivation state remedies. *Parratt's* rule was applied to defeat another prisoner's claim for deprivation of property without due process where the deprivation was allegedly intentional. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "[T]he State might be able to predict that guards occasionally will harass or persecute prisoners they dislike, but cannot 'know when such deprivations will occur.'" *Zinermon*, 494 U.S. at 136, 110 S.Ct. at 989 (quoting *Hudson*, 468 U.S. at 533, 104 S.Ct. at 3203).

In *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir.1991), this court succinctly stated the rule and reasoning of *Parratt* and its progeny:

> In *Parratt* cases, then, the facts are such that pre-deprivation remedies are impossible and adequate post-deprivation remedies are all that is required by due process. If the state provides post-deprivation remedies, and if due process given the particular wrong alleged requires only post-deprivation remedies, then federal courts will require proof that those presumptively adequate remedies are inadequate before a § 1983 claim can be maintained. Such a claim is not "ripe" for consideration by a federal court because the state action at issue is not complete. If the state procedures adequately cure any alleged deprivation of property then due process has not been violated. The inadequacy of state remedies generally cannot be proven unless those remedies are exhausted.

█ Cases in which a due process challenge is made to deprivations resulting from the enforcement of an established state procedure stand in sharp contrast to *Parratt* and *Hudson* cases. In such cases, the actions at issue are not random or unauthorized, and it is both practical and feasible for the state to provide pre-deprivation process to the aggrieved party. A § 1983 plaintiff making this type of claim need not plead or prove the inadequacy of state remedies. *Macene*, 951 F.2d at 706.

In this Circuit, then, a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a "random and unauthorized act" *and* that available state remedies would not adequately compensate for the loss.

*Id.* (emphasis in original; citations omitted).

In *Macene*, the holder of a landfill license claimed that its license was rendered valueless because of the county commission's refusal to include the licensee's landfill proposal in its plan and to forward the proposal to the entities whose approval was required by statute. The licensee's central contention concerned the alleged bias of members of the commission's planning committee who were in direct competition with the licensee. Thus, the due process challenge in *Macene* was to a state process dictated by statute, and to the composition of the planning committee, also prescribed by statute. Because the gravamen of the complaint was that the state procedure itself deprived the licensee of due process, the court did not impose *Parratt's* burden of pleading and proving the inadequacy of state remedies. *Macene*, 951 F.2d at 706.

*Macene* describes suits that fall within one of two clearly delineated categories: those involving a direct challenge to an established state procedure or those challenging random and unauthorized acts. To the extent that due process suits fit neatly into one of the two identified categories, the burdens of proof identified by *Macene* apply.

Not all due process challenges can be so conveniently categorized, however. Specifically, it is not necessarily the case that a due process challenge to state action not involving an "established state procedure" must automatically come within the *Parratt* and *Hudson* rule governing random and unauthorized acts. *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), is a good example. In *Zinermon*, the plaintiff had been admitted to a state mental health facility after signing a voluntary admission form. After his

discharge five months later, the plaintiff contended that he had been incompetent to give knowing and informed consent to be admitted, and claimed that his five-month hospitalization had deprived him of liberty without due process of law.

The Court reviewed Florida's statutory scheme for admissions to mental hospitals. *Id.* at 122–23, 110 S.Ct. at 981. Significantly, the Court noted that the plaintiff did not claim that he was deprived of due process by an established state procedure. . . .

> Burch apparently concedes that, if Florida's statutes were strictly complied with, no deprivation of liberty without due process would occur. If only those patients who are competent to consent to admissions are allowed to sign themselves in as "voluntary" patients, then they would not be deprived of any liberty at all. And, if all other patients—those who are incompetent and those who are unwilling to consent to admission—are afforded the protections of Florida's involuntary placement procedures, they would be deprived of their liberty only after due process.

*Id.* at 117–18, n. 3, 110 S.Ct. at 979, n. 3.

The Court held that it may be constitutionally permissible for a state to have a statutory scheme which gives officials "broad power and little guidance in admitting mental patients." However, if those officials fail to provide procedural safeguards to a person deprived of liberty by virtue of an admission to a state mental facility, they "cannot then escape liability by invoking *Parratt* and *Hudson*" to claim that post-deprivation process is the most to which the aggrieved party is entitled. *Id.* at 135, 110 S.Ct. at 988.

> It is immaterial whether the due process violation Burch alleges is best described as arising from petitioners' failure to comply with state procedures for admitting involuntary patients, or from the absence of a specific requirement that petitioners determine whether patient is competent to consent to voluntary admission. *Burch's suit is neither an action challenging the facial adequacy of a State's statutory procedures, nor an action based only on state officials' random and unauthorized violation of state laws.* Burch is not simply attempting to blame the State for misconduct by its employees. He seeks to hold state officials accountable for their abuse of their broadly delegated, uncircumscribed power to effect the deprivation at issue.

*Id.* at 135–36, 110 S.Ct. at 988–89 (emphasis added).

The Court then concluded that the case was not controlled by *Parratt* and *Hudson* for three reasons: First, the state actors could not claim that the deprivation at issue was unpredictable because "[a]ny erroneous deprivation will occur, if at all, at a specific, predictable point in the admissions process—when a patient is given admission forms to sign." *Id.* at 136, 110 S.Ct. at 989. Second, the Court could not say that pre-deprivation procedure was impossible because the state "already has an established procedure for involuntary placement." *Id.* at 136–37, 110 S.Ct. at 989. Third, the defendant hospital could not characterize the conduct of its employees as unauthorized in the sense the term is used in *Parratt* and *Hudson* because the state delegated to them both the power and authority to confine individuals, and "the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement." *Id.* at 138, 110 S.Ct. at 990.

The Court thus concluded that the defendant state hospital and its employees could not escape liability under § 1983 by characterizing their conduct as a random and unauthorized violation of Florida law which the state was not in a position to predict or avert. *Id.*

*Zinermon* thus counsels that a court look to the nature of the deprivation complained of and the circumstances under which the deprivation occurred to determine whether the rule of *Parratt* and *Hudson* applies to defeat a procedural due process claim. A careful scrutiny of these factors is particularly warranted in a case such as the one before us here, where the plaintiff specifically alleges that the con-

duct at issue was not random and unauthorized (and thus outside the rule of *Parratt* and *Hudson*) but does not specifically challenge or identify an established state procedure that caused the liberty and property deprivations at issue.

We believe that this case is controlled by *Zinermon*, and that Mertik has alleged sufficient facts to avoid the rule of *Parratt* and *Hudson*.

According to Mertik, Joseph Tal, the city's director of recreation, instructed the ice rink's manager, Linda Blalock, to prevent Mertik from teaching students at the city's rink. Mertik alleges that neither Tal nor Blalock had the "lawful authority" to prohibit her from providing lessons at the rink. We take this allegation to mean that the directive was "wrongful" as to Mertik, not "unauthorized," for Mertik also alleges that defendants' actions were "neither random nor unauthorized." Mertik further alleges that she was entitled to prior notice and an opportunity to be heard before having her ice rink privileges revoked and the accusations against her publicized, and that it was not unfeasible or impractical for the defendants to have provided her with prior notice and a hearing.

As in *Zinermon*, the plaintiff here has alleged sufficient facts to demonstrate that the deprivation of which she complains was authorized and predictable and that defendants could feasibly have provided her an opportunity to protest their proposed actions prior to banning her from the ice rink. She alleges that the actions of which she complains were taken by two persons of authoritative posts within the defendant city's recreation department, the director himself and the manager of the facility in question, and that these actions were not unauthorized. She alleges that notice and a hearing prior to being banned from the rink and being the subject of stigmatizing publications were feasible. Defendants dispute this based on what they claim were "exigent" circumstances requiring them to take immediate action to protect the children from possible deviant criminal activity and to protect the city from potential liability. These arguments can only be ad-

dressed on a factual record presented on a Rule 56 motion or at trial. *See* n. 8. Finally, Mertik alleges that it was not impractical for the defendants to have provided prior notice and a hearing. This case does not present a situation in which the city was at a loss to predict when or under what circumstances the rights of a plaintiff would be infringed, as in *Parratt* and *Hudson*. The loss here came at a point that could only be predicted by the defendants, when the deliberate decision was made, as defendants claim, to eliminate the perceived risk of harm to the students and potential liability to the city.

We find that Mertik has made sufficient allegations to take her out of the rule of *Parratt* and *Hudson*, and reliance on those cases was insufficient to state as a matter of law that Mertik was not entitled to notice and an opportunity to be heard prior to being banned from the city's rink. Mertik is entitled to attempt to prove her claim under *Zinermon* that she was entitled to pre-deprivation process. The district court's dismissal under Rule 12(b)(6) must be reversed.

*Substantive Due Process*

Mertik alleges that the defendants' conduct violated rights guaranteed her by the substantive element of the Due Process Clause of the Fourteenth Amendment. We disagree.

Substantive due process claims are of two types. The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under "the Fourteenth Amendment *simpliciter.*" *Parratt*, 451 U.S. at 536, 101 S.Ct. at 1913 (emphasis in original); *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir.1989). Mertik has not alleged such a violation. *Thomson v. Scheid*, 977 F.2d 1017 (6th Cir.1992).

The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of "shocks the con-

science" of the court. *McMaster v. Cabinet for Human Resources*, 824 F.2d 518, 522 (6th Cir.1987) (citing *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). We agree with the conclusion of the district court that the conduct at issue here does not rise to this level. *Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir.1991). Mertik's substantive due process claim was properly dismissed under Rule 12(b)(6).

### IV.

If there is a theme to this case, it may be stated as one of the best intentions going awry. Defendants claim that they acted as they did, in part, to protect the children who utilized their facility, a laudable goal to say the least. Mertik claims that she posed no risk to the students, and that whatever defendants' intentions, her ability to pursue her chosen means of livelihood and her reputation were grievously harmed.

Of immediate concern to this court is the district court's action in dismissing Mertik's claim under Rule 12(b)(6). The general procedure employed by the court was proper, *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir.1983). It is appropriate for the court to closely monitor its docket, especially for cases of questionable subject matter jurisdiction.

However, there are risks posed by the precipitous dismissal of a § 1983 claim such as this one, where other preliminary defenses will undoubtedly be asserted and could conceivably result in an interlocutory appeal. In the event of an erroneous initial decision, the ultimate expenditure of court resources may be much greater. Moreover, the effects on the litigants in this case may be even more aggravated. The state law claims have been pending in state court for over a year. Presumably discovery has been conducted and perhaps dispositive motions filed. It can serve no one's interests to adjudicate this case piecemeal.

We caution, therefore, that attention be given to Fed.R.Civ.P. 12(b)(6) dismissals, particularly when the defendants have not yet answered and asserted their affirmative defenses, or when the dismissal will result in the remand of state law claims while the federal claim can proceed on appeal.

The district court's dismissal of the § 1983 claim contained in count 5 against defendant Greenbrier Figure Skating Club and plaintiff's substantive due process claim is AFFIRMED. The dismissal of plaintiff's procedural due process claims is REVERSED. The case is REMANDED for proceedings consistent with this opinion.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that Mrs. Mertik has a property interest under the contract analysis of *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987). Defendants have interfered with plaintiff's contract with her students and Greenbrier Club. I also agree that she has a property interest in continued access to public facilities required for her employment. She had enjoyed this privilege in the past and could legitimately rely on the continuation so long as the rink continued to be used by Greenbrier. I also agree that the plaintiff had a liberty interest. The withdrawal of her privilege to teach students at the rink deprived her of "a right previously held under state law." *Paul v. Davis*, 424 U.S. 693, 708, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). That "altered her status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards." *Id.* (distinguishing *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)).

However, I agree with the District Court that no failure of procedural due process occurred since the deprivation was random and unauthorized so that a pre-deprivation hearing was impracticable and thus not required. The existence of post-deprivation state law remedies is acknowledged in the first four counts of plaintiff's complaint. Plaintiff has not alleged that the acts com-

plained of or similar acts had ever occurred before or that any policy of the City of Parma deals with the type of situation that occurred here. The case is thus distinguishable from *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). In *Zinermon*, it was the policy and practice of the state mental health facility to routinely permit admission clerks, without guidance as to standards to be used, to decide whether persons were competent to give knowing and informed consent to be committed. This routinely-followed procedure resulted in persons being confined who were incompetent to consent. The alleged error in accepting the plaintiff's consent to be admitted when he was incompetent to give such consent resulted from the procedure the hospital had put in place, and was not random, but as the court pointed out, to be expected. Here the acts of Blalock and Tal Jr. are alleged to be malicious and intentional; they are not alleged to be in accordance with what is ordinarily done. The chance that a skating instructor will be charged with sexual misconduct is remote and thus unpredictable. The allegation that Blalock and Tal Jr.'s acts were not unauthorized is conclusionary and contrary to the facts alleged in the complaint. As the District Court pointed out "Mertik does not allege in any of the pleadings that the actions were undertaken pursuant to established procedures. She alleges no policy of the City of Parma," nor is it alleged that Parma had procedures or a policy whereby its employees would screen or exclude persons using the rink. Rather, she is alleging the malicious type of act involved in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). There, a prison guard was alleged to have intentionally destroyed the prisoner's property. The Court held that the state could not anticipate and control in advance such random and unauthorized conduct. Similarly, here the state could not control in advance the slanderous statements alleged to be made by its employees which is the foundation of the liberty interest claim. That claim, at least, is based on random acts.

I concur in Circuit Judge JOINER's substantive due process analysis and in the dismissal of Greenbrier Figure Skating Club.