OPINION
{¶ 1} Appellant, the city of Mentor, appeals a judgment of the Lake County Court of Common Pleas, permanently enjoining it from enforcing an order issued by appellant's Director of Parks, Recreation and Public Lands, banning appellee, Robert Kelly, from entering the Mentor Civic Arena for five years.
 {¶ 2} Appellant's ban on appellee stems from an incident which occurred on February 28, 2000, when appellee engaged in an altercation in a locker room in the Garfield Heights Ice Arena.
 {¶ 3} Appellant was involved in the youth hockey league in the city of Mentor. Appellee was the head coach, and his son played on the team. In November 1999, appellee was removed from that position due to allegations that he was too physically and verbally rough with the children.
 {¶ 4} Approximately one month after appellee was removed from his head coaching position, the manager of the Civic Arena, Terri Rosenwald, called a meeting, to allow the parents to air their differences. Ms. Rosenwald warned the parents that poor behavior would cause her to have to ask the parent to leave the arena, to remove a parent from watching practices or games for the season, or to disband the team.
 {¶ 5} On February 28, 2000, the team on which appellee's child played was involved in a game at the Garfield Heights Ice Arena. After the game, which the Mentor team lost in overtime, the children were in the locker room removing their equipment, with parental assistance. Appellee's wife came into the locker room and made a comment about the coaching being bad. One of the coaches replied: "wah, wah, wah."
 {¶ 6} Appellee then came into the locker room and accused the coach of mocking his wife. Appellee said to the coach, "[y]ou're nothing but a puss; I'm gonna kick your ass back in Mentor," During the same incident, appellee also told three other coaches that he would "kick their ass [sic] back in the City of Mentor." No altercations occurred at the Mentor Civic Arena or in the city of Mentor.
 {¶ 7} After the Garfield Heights incident, Ms. Rosenwald sent appellee a letter notifying him that it would be investigated. Ms. Rosenwald also sent letters to all the parents who were present, requesting a written statement describing what occurred that evening. Appellee also submitted his account of what had happened.
 {¶ 8} After reading these accounts, Ms. Rosenwald made a recommendation to the Director of Parks, Recreation and Public Lands, Kurt Kraus ("Kraus"). She recommended that appellee be banned from entering the locker room and the bench area for five years. Kraus reviewed the statements and the recommendation and sent a letter to appellee informing him that he was prohibited from entering the entire Mentor Civic Arena for five years. Kraus told appellee, in his letter, that appellee was permitted to pick up and drop off his wife and children in front of the arena, but that, should he enter the arena, he would be arrested and prosecuted for trespassing. Kraus intended this penalty to punish appellee for his actions, on February 28, 2000.
 {¶ 9} Appellee filed suit, seeking a declaratory judgment that appellant's actions had deprived him of due process of law and seeking an injunction prohibiting appellant from enforcing its ban on him. After a trial, the court held that appellant's actions had violated appellee's due process rights, and enjoined appellant from enforcing its ban.
 {¶ 10} Appellant timely appealed, asserting the following assignments of error:
 {¶ 11} "[1.] The trial court erred in concluding that plaintiff-appellee's behavior on February 28, 2000 did not constitute "threats" to harm others. (T.d. 34).
 {¶ 12} "[2.] The trial court erred in holding that plaintiff-appellee possessed a property interest protected by the due process clause. (T.d. 34).
 {¶ 13} "[3.] The trial court erred in holding that plaintiff-appellee has a protected liberty interest to enter and remain in the Mentor Civic Arena. (T.d. 34).
 {¶ 14} "[4.] The trial court erred in holding that the plaintiff-appellee's right to procedural due process was violated. (T.d. 34).
 {¶ 15} "[5.] The trial court erred in holding the City of Mentor acted in an arbitrary and capricious manner in denying the plaintiff-appellee access to the civic arena. (T.d. 34)."
 {¶ 16} In appellant's assignments of error, it argues that the trial court erred in determining that its five-year ban on appellee violated appellee's right to due process of law. We affirm the trial court's judgment on grounds other than those asserted by the court.
 {¶ 17} Under Ohio law, when a governmental agency is performing a proprietary function, it possesses all the same rights and privileges, and is subject to the same restrictions as a private citizen performing that same function. State ex rel. White v. Cleveland (1932), 125 Ohio St. 230, paragraph one of the syllabus.
 {¶ 18} R.C. 2744.01 defines the terms "governmental function" and "proprietary function." Though this section of the Code provides for sovereign immunity, and does not directly apply to the case at bar, we find the definitions contained in R.C. 2744.10 instructive. We see no reason why the definitions enacted by the legislature for use in determining sovereign immunity should not apply to this situation as well. The limitation of liability that comes as a result of an act being classified as a governmental function should be accompanied by the reciprocal responsibility of performing that function as a governmental actor rather than as a private actor.
 {¶ 19} R.C. 2744.01(G) provides that:
 {¶ 20} "(2) A `proprietary function' includes, but is not limited to, the following:
 {¶ 21} "***
 {¶ 22} "(e) The operation and control of a public stadium, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility."
 {¶ 23} At the time of the incident and the trial court's judgment entry, R.C. 2744.01(C) provided that:
 {¶ 24} "(2) A `governmental function' includes, but is not limited to, the following:
 {¶ 25} ***
 {¶ 26} "(u) The design, construction, reconstruction, renovation, repair, maintenance, and operation of any park, playground, playfield, indoor recreational facility, zoo zoological park, bath, swimming pool, or pond, and the operation and control of any golf course[.]"
 {¶ 27} We agree that an ice rink is an indoor recreational facility. Maxel v. Cleveland Hts. (Sept. 30, 1999), 8th Dist. No. 74851, 1999 Ohio App. LEXIS 4672, at *9-10. Thus, we believe that appellant's operation of the rink is a governmental function.
 {¶ 28} Kraus, as the Director of Parks, Recreation and Public Lands, was delegated the authority by appellant to "be responsible for the maintenance and operation of municipal public lands and related programs." Mentor Municipal Ordinance 31.52. The powers possessed by Kraus are only those which were delegated to him. Nowhere in appellant's delegation of authority is the Director of Parks, Recreation and Public Lands given unilateral authority to gather evidence, hold quasi-judicial proceedings, punish patrons for bad behavior, or prohibit someone from entering the public properties under his control. See State v. McGroarty
(Oct. 31, 1997), 11th Dist. No. 96-L-158, 1997 Ohio App. LEXIS 4837, at *6-7. The director may utilize available lawful means to accomplish these ends, but he or she cannot independently perform these functions.
 {¶ 29} At the time that evidence of appellee's bad behavior was solicited and Klaus determined that appellee was guilty of "egregious behavior," neither the City of Mentor nor the Department of Parks, Recreation and Public Lands had established a conduct policy or guidelines as to what the consequences would be if the policy were violated. A "zero tolerance policy," published by USA Skate, the organization that sanctioned the league, was posted on a wall of the arena, but there is no evidence that this policy was ever adopted by the city or the Department of Parks, Recreation and Public Lands. Further, this policy only covered actions occurring during a game, and only provided that a violator could be asked to leave the arena.
 {¶ 30} In addition, Klaus lacked the authority to punish appellee for acts committed in another arena in another city. Thus, Klaus personally lacked the authority to ban appellant from entering the Mentor Civic Arena. See Mertik v. Blalock (C.A.6, 1993), 983 F.2d 1353, 1357. Appellant's ban on appellee is, therefore, void ab initio and unenforceable. The trial court did not err in vacating the ban and enjoining appellant from enforcing it.
 {¶ 31} Because appellant's action was taken without authority, and was void ab initio, appellant's assignments of error with regard to the due process consequences of its acts are moot.
 {¶ 32} Given the recent tragedies involving out-of-control parents and spectators at youth sporting events, Klaus' desire to prevent a similar tragedy from occurring in the Mentor Civic Arena is commendable; however, this laudable goal must be pursued from within the structure of lawful authority.
 {¶ 33} Appellant is not left powerless to take reasonable steps to provide for the safety and welfare of those using the Mentor Civic Arena. Appellant possesses the authority to maintain, operate, and police its facilities. Security officers can be provided. Appellant has at its disposal the full panoply of criminal law. Should a similar incident occur in the Mentor Civic Arena, the offender should be charged with disorderly conduct or menacing, or another appropriate charge. If appellant wished to prevent an offender from entering its property, it could secure a restraining order. Furthermore, appellant could adopt rules governing the conduct of persons in the arena and delegate the authority to enforce those rules.
 {¶ 34} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY, J., concurs.