**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4614
_____

KELLY D. FANTI, individually and t/b/a Kelly's Auto Tag Service,
Appellant
v.

RICHARD WEINSTOCK; TRUMAN BRANDT; JAMES HANKEY;
SUSAN K. WILSON a/k/a Sue Wilson; ANITA M. WASKO
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-11-cv-01077)
District Judge: Honorable Robert D. Mariani
_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 8, 2015

Before: SHWARTZ, KRAUSE, and COWEN, *Circuit Judges*

(Filed: October 9, 2015)

_____

OPINION[*]

_____

KRAUSE, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Kelly D. Fanti appeals the District Court's grant of summary judgment in favor of Appellees, Troopers with the Pennsylvania State Police and employees of the Pennsylvania Department of Transportation ("PennDOT"), on her Fourteenth Amendment substantive and procedural due process claims brought under 42 U.S.C. § 1983. For the reasons set forth below, we will affirm.

I.

Fanti owns and operates Kelly's Auto Tag Service ("Kelly's"), a vehicle service business. As part of her business, Fanti contracted with PennDOT to perform the "processing and issuance of temporary registration cards, plates, [and] permits," and "delivering and obtaining driver licensing and vehicle registration documents to and from PennDOT for consumers in Pennsylvania." Supplemental Appendix ("S.A.") 3. Under the terms of the contract, Fanti was subject to inspection and audit, on behalf of PennDOT, by "Commonwealth employees or designees, including the Pennsylvania State Police." S.A. 4.

On June 17, 2009, Pennsylvania State Troopers Truman Brandt and James Hankey conducted an audit of Kelly's based on two complaints relayed by Trooper Richard Weinstock and a third complaint filed by David Jackson. The audit revealed "numerous irregularities in the records—including records not being kept in chronological order, titles that were completed but not notarized, and applications which had never been sent into PennDOT." S.A. 6. Among the documentation never delivered to PennDOT were

2

218 registration applications with unpaid fees totaling $42, 201.64. Upon completion of the audit, Trooper Brandt contacted Susan Wilson, a PennDOT employee, regarding his discovery of the paperwork at Kelly's. Wilson recommended to her supervisor that he "terminate the Agent Services Contract and the Messenger Services Contract for Kelly's" based on Kelly's "failure to submit applications and fees to the Commonwealth." S.A. 31.

Following the audit, PennDOT faxed an order to Fanti that immediately terminated the service contracts between Fanti and PennDOT. On June 26, 2009, Fanti requested a meeting with PennDOT to review the termination decision, but indicated that her counsel was not available during the week of July 13, 2009. Under the terms of their service contract, PennDOT was required to hold such a meeting within thirty days of Fanti's request, but the meeting was not scheduled until August 3, 2009, thirty-eight days after her request.[1] On April 23, 2010, nearly nine months after the August 3, 2009 meeting, PennDOT issued a letter finalizing the termination of the service contracts. Fanti then filed an appeal of the termination, and a hearing was held on July 29, 2010. The hearing officer found that the "pre-process termination was justified by an important governmental interest . . . and accompanied by a substantial assurance that the deprivation was not baseless" but expressed concern that Fanti's post-deprivation process

---

[1] The Appellees state that the meeting was held thirty-seven days after it was requested, while the Appellant quotes from the hearing officer who stated that the meeting was held forty days after it was requested.

3

was not "reasonably prompt." App. 115a. Specifically, the hearing officer looked to the language of the service contracts between Fanti and PennDOT requiring that a meeting requested by the service agent be held within thirty days of the request. However, noting the extent of Fanti's delinquency in submitting the 218 applications and associated fees, the hearing officer ultimately issued "a suspension equal to time served while this matter has been adjudicated (approximately 17 months), plus 30 days," App. 116a, and as Fanti did not file exceptions to the hearing officer's proposed report within thirty days, the hearing officer's decision became final and effective on December 17, 2010.

Thereafter, Fanti filed a complaint against the Pennsylvania State Troopers involved in her audit and the PennDOT employees involved in her termination proceedings, claiming violations of her procedural and substantive due process rights. The parties filed cross-motions for summary judgment, and the Appellees raised a qualified immunity defense. The District Court granted summary judgment in favor of the Appellees, holding that they had committed no substantive or procedural due process violations and that they prevailed on their qualified immunity defense, which turns on whether there was a violation of a constitutional right that was clearly established. *Fanti v. Weinstock*, No. 3:11-CV-01077, 2014 U.S. Dist. LEXIS 155322, at \*13, \*24, \*28-32 (M.D. Pa. November 3, 2014). Fanti timely appealed the entry of summary judgment in favor of the Appellees, arguing that the District Court erred in concluding that the facts did not support her procedural and substantive due process claims and that the Appellees

were entitled to qualified immunity.[2]

## II.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), by showing that the "non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986)). To survive a motion for summary judgment, "the non-moving party must show specific facts such that a reasonable jury could find in its favor," *id.*; "mere allegations are insufficient," *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). We exercise plenary review over a District Court's grant of summary judgment and, like the District Court, must draw all reasonable inferences in favor of the non-moving party. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 451 (3d Cir. 2006).

## III.

Because qualified immunity is not merely a defense, but also "an entitlement not to stand trial or face the other burdens of litigation," *Miller v. Clinton County*, 544 F.3d 542, 547 (3d Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotation marks omitted)), "any claim of qualified immunity must be resolved at the

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

earliest possible stage of litigation," *id.* (citing *Saucier*, 533 U.S. at 201). As government officials, Appellees are entitled to qualified immunity from § 1983 claims for damages unless (1) the facts alleged show the violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the alleged misconduct. *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (citation omitted); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To determine whether Appellees are entitled to qualified immunity, we must first address whether they violated Fanti's Fourteenth Amendment due process rights.

To bring a Fourteenth Amendment claim under 42 U.S.C. § 1983, Fanti must show: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived [Fanti] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citation omitted). Fanti argues on appeal that the named Pennsylvania State Troopers violated her substantive due process rights when they conducted an audit of her premises and that the named PennDOT employees violated her procedural due process rights in terminating her service agreement. We will address each claim in turn.

A.

In challenging the District Court's dismissal of the substantive due process claim, Fanti focuses primarily on alleged statements made by Trooper Weinstock over the

6

course of his two visits to Kelly's. According to Fanti, Trooper Weinstock told her, "I don't like your attitude," and "I'm going to shut you down." App. 120a. Again, on a different visit, and while in front of a witness, he allegedly stated, "I'll be back . . . or they'll be back," and "we're going to close you down." App. 121a.[3] Fanti appears to be arguing that Trooper Weinstock's statements are evidence that bias led to the "summary closure" of Kelly's. Appellant's Br. 19. Fanti, however, not only fails to offer legal support, but also does not plead facts sufficient to state a substantive due process claim.

To establish a substantive due process claim, Fanti must show that she was deprived of a protected interest by government action that was "arbitrary, irrational, or tainted by improper motive." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (internal quotation marks and citation omitted). Executive action violates due process "only when it shocks the conscience, which encompasses only the most egregious official conduct." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (internal quotation marks and citation omitted). "[M]erely alleging an improper motive is insufficient" to establish conduct that shocks the conscience. *Id.*; s*ee also Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004) (holding that the "shocks the

---

[3] Fanti argues on appeal that the District Court "does not reference any where [sic] in its Opinion the fact that Weinstock, in the presence of an independent third party, verbally threatened to close Appellant's business." Appellant's Br. 15, 19. On the contrary, the District Court clearly acknowledged Trooper Weinstock's statements in its opinion: "According to Lukowich, Weinstock 'threatened to close [Fanti] down permanently,' while Fanti 'sat an[d] listened while the Trooper vented several times in front of everyone.'" *Fanti*, 2014 U.S. Dist. LEXIS 155322, at *3.

7

conscience" standard was not met where plaintiff alleged that zoning officials applied requirements on plaintiffs' properties not applied to others; "pursued unannounced and unnecessary inspection and enforcement actions"; and "maligned and muzzled" the plaintiffs). Even severe verbal harassment typically does not rise to the level of a constitutional violation. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 401 (3d Cir. 2000) (no substantive due process violation where the plaintiff was accused of being a "crook" and "responsible for cost overruns"); *see also Costello v. Mitchell Pub. Sch. Dist.*, 266 F.3d 916, 920-21 (8th Cir. 2001) (no substantive due process violation where a teacher called a student "retarded," "stupid," and "dumb," and threw a notebook at the student); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993) (no substantive due process violation where plaintiff was accused of sexually abusing minors and banned from an ice skating rink).

Construing all the facts in Fanti's favor, including her description of Trooper Weinstock's statements that he was going to shut Kelly's down, we agree with the District Court that the alleged misconduct of which Fanti complains does not shock the conscience and therefore does not give rise to a substantive due process claim.

### B.

Fanti fares no better on her procedural due process claim. "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due

8

process of law." *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (internal quotation marks and citation omitted). The Appellees concede that Fanti had a protected property interest in her service agreements with PennDOT but argue that the process Fanti received comported with the Constitution. Fanti, in turn, argues that she was deprived of her service contracts with PennDOT without notice or a hearing for over a year in violation of her due process rights. We find Fanti's argument unavailing.

The Supreme Court has held that "procedural due process in the administrative setting does not always require application of the judicial model." *Main Rd. v. Aytch*, 565 F.2d 54, 58 (3d Cir. 1977) (quoting *Dixon v. Love*, 431 U.S. 105, 115 (1977)). Thus, a post-deprivation hearing that sufficiently provides the "procedural protections as the particular situation demands" may satisfy due process. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation mark and citation omitted) (holding that a hearing is not required prior to the termination of disability benefits where administrative procedures provide for a post-deprivation hearing); *see also Dixon*, 431 U.S. at 112, 115 (holding that a hearing is not required prior to the suspension of a driver's license where a post-deprivation hearing was available before final revocation). This is particularly so "where a state must act quickly," given the exigent circumstances. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Thus, "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted," may justify "postponing the opportunity to be heard until after the initial deprivation." *Id.* at 930-31

9

(internal quotation marks and citation omitted). Here, the government had an interest in acting quickly to secure the documents that Fanti had failed to file with the Commonwealth, to ensure those documents were expeditiously filed, and to prevent any delays in the proper filing of additional vehicle registration documents. Moreover, given the evidence collected during the audit, including the 218 registration applications that had never been forwarded to PennDOT, there was "a substantial assurance that the deprivation [was] not baseless or unwarranted." *Id.* at 931.

As to the delay in providing a meeting with PennDOT and the administrative appeal hearing, we have previously held that a twenty-month delay between the deprivation and the postdeprivation hearing did not violate the plaintiff's due process rights. *Ritter v. Cohen*, 797 F.2d 119, 123-24 (3d Cir. 1986) (citing *Givens v. U.S. R.R. Ret. Bd.*, 720 F.2d 196, 201 (D.C. Cir. 1983) (nineteen-month delay to adjudicate an appeal does not violate due process where plaintiff offers no evidence of intentional delay); *Frock v. U.S. R.R. Ret. Bd.*, 685 F.2d 1041, 1047 (7th Cir. 1982) (two-year delay to adjudicate an appeal does not violate due process)). Fanti received a meeting with PennDOT a mere thirty-eight days (a portion of which her counsel was unavailable) after the preliminary termination of her service contracts, an administrative appeal hearing thirteen months after termination, and a final determination, which she chose not to appeal, seventeen months after termination. This relatively short timeframe for Fanti's

hearings, absent evidence of intentional delay, does not rise to the level of a due process violation. *See Givens*, 720 F.2d at 201.

Because Fanti has failed to allege facts sufficient to show the violation of a constitutional right, we need not reach the question of whether the right was clearly established. *See Wright v. City of Phila.*, 409 F.3d 595, 600 (3d Cir. 2005) (where a court concludes that there is no constitutional violation, it need not address whether the government official violated a clearly established right). Appellants therefore prevail on their qualified immunity defense. *Id.* at 604.

After a careful review of the record, we agree with the District Court that no genuine disputes of material fact remain and that Fanti failed to show specific facts sufficient for a reasonable jury to find in her favor as to any of her claims. Accordingly, Appellees were entitled to judgment as a matter of law, and we will affirm the judgment of the District Court.