NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1371

_____

SOUTH ALLEGHENY PITTSBURGH RESTAURANT ENTERPRISES, LLC,

Appellant

v.

CITY OF PITTSBURGH; CITY OF PITTSBURGH DEPARTMENT OF
PERMITS LICENSES AND INSPECTIONS; MARK MARIANI;
ZONING BOARD OF ADUSTMENT OF THE CITY OF PITTSBURGH

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-16-cv-01393)
District Judge: Hon. Nora B. Fischer

_____

Argued September 25, 2019

Before: SMITH, Chief Judge, McKEE, AMBRO, Circuit Judges

(Opinion filed: March 27, 2020)

Christopher W. Cahillane
Richard B. Tucker (Argued)
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA 15222

    Counsel for Appellant

Matthew S. McHale
   Associate City Solicitor
Yvonne S. Hilton
Julie E. Koren (Argued)
City of Pittsburgh
Department of Law
414 Grant Street
313 City County Building
Pittsburgh, PA 15219

      Counsel for Appellees

---

OPINION[*]

---

AMBRO, <u>Circuit Judge</u>

South Allegheny Pittsburgh Restaurant Enterprises, LLC ("SAPRE") brought a 42 U.S.C. § 1983 action against the City of Pittsburgh, its Zoning Board of Adjustment, its Department of Permits, Licenses and Inspections ("DPLI"), and Mark Mariani, one of DPLI's employees (collectively, unless the context requires otherwise, the "City"), for their roles in closing SAPRE's business just hours after it first opened. We affirm the District Court's dismissal of SAPRE's substantive due process and equal protection claims, as the City's actions did not constitute constitutional harms. In contrast, we vacate and remand the Court's dismissal of SAPRE's claim that the City violated its right to procedural due process when it arbitrarily invoked its emergency powers without evidence of exigent circumstances, denying SAPRE constitutionally required pre-deprivation process.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

I. Factual and Procedural History

During the summer of 2016, SAPRE prepared to open Mother Fletcher's, an under-21 club with a dance floor and a disk jockey. Mother Fletcher's did not serve alcohol or food other than potato chips, pop tarts, pretzels, and a variety of non-alcoholic beverages. SAPRE inherited the previous property owner's 1986 Certificate of Occupancy ("CO"), which classified the premises as a "Restaurant" under the City of Pittsburgh Zoning Code (the "Zoning Code"). The CO contained a special condition that allowed the first floor and basement to be operated as a restaurant and bar without live entertainment. Prior to its official opening, DPLI visited Mother Fletcher's premises various times, making recommendations on how to comply with City ordinances and reviewing architectural renderings for the permit-approval process.

Mother Fletcher's opened during the evening of September 3, 2016. Flyers advertised its opening night as "the biggest [u]nder-21 party in the Tri-State area" with the "craziest crowds in Pittsburgh." App. 49a, 93a. Based on these advertisements, Maura Kennedy, the Director of DPLI, told Mark Mariani, her Assistant Director of Operations, to inspect the premises and close the business if he discovered any dangerous safety issues.

Just after midnight on September 4—after Mother Fletcher's opening-night patrons had left the premises—Mariani stopped to observe the business from across the street, later testifying that the city police had not received any complaints and the atmosphere outside was "docile and calm." App. 96a. Yet, he returned 20 minutes later with approximately 28 police officers. Without notice, Mariani entered the premises and

3

explained to SAPRE's owners that he was shutting it down for not operating as a "Restaurant," as its CO required. He issued a Stop Work/Cease Operations Order (the "Cease Order") closing Mother Fletcher's immediately. The business never reopened.

The City contends that it issued the Cease Order in accord with Zoning Code § 924.05.B. The Code includes two procedures for responding to violations. Under § 924.05.A, the Chief of the Bureau of Building Inspection, or the appropriate official, must give written notice of any violation to the owner if the violation does not involve, as relevant here, an emergency. The owner has 30 days to correct the noticed violation before the City undertakes any further enforcement action. Alternatively, if there is an emergency, § 924.05.B permits the City to use its enforcement powers and remedies without prior notice.

After the City shut down Mother Fletcher's, SAPRE filed in federal District Court a motion for a temporary restraining order and preliminary injunction. The Court found that SAPRE's claims were not mature because it had not appealed the Cease Order to the Zoning Board. It therefore dismissed SAPRE's request for injunctive relief without prejudice. *See South Allegheny Pittsburgh Rest. Enter., LLC v. City of Pittsburgh et al.*, No. 16-cv-1393, 2016 WL 4962926 (W.D. Pa. Sept. 16, 2016).

SAPRE then filed an appeal with the Zoning Board, which scheduled a hearing for February 2017. City regulations stay enforcement proceedings pending appeal unless the officer involved certifies that "a stay would cause imminent danger to life or property." Zoning Code § 923.02.G. Although no City official filed a certification to override the

4

stay, the City declined to allow Mother Fletcher's to operate while its appeal was pending.

After the hearing, the Zoning Board failed to rule within the statutorily allotted 45-day window. SAPRE rejected the Board's request for additional time, which resulted in a deemed denial of the appeal. SAPRE appealed to the Pennsylvania Court of Common Pleas. Per that Court's direction, the Board released its findings that the property had not been used as a "Restaurant," and thus asserted the Cease Order had been properly issued. The Court disagreed, determining that the City lacked sufficient evidence of an emergency and setting aside the Cease Order.

SAPRE followed by filing its Second Amended Complaint with the District Court in July 2018. It alleged that the City violated its Fourteenth Amendment rights to procedural due process, substantive due process, and equal protection, hence entitling it to a remedy under 42 U.S.C. § 1983.[1] The City moved to dismiss the entire complaint under Federal Rule of Civil Procedure 12(b)(6) for the failure to state a claim on which relief can be granted, and Mariani moved to dismiss claims against him based on qualified immunity. The District Court granted both motions with prejudice.

---

[1] SAPRE waived its allegations that the City violated its Fourth and Eighth Amendment rights by violating the expectation of privacy in its property and imposing the excessive fine of closure, as it did not address these claims in its Motion to Oppose the City's Motion to Dismiss before the District Court or in its appeal to us.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343.  We have jurisdiction under 28 U.S.C. § 1291.

We take a fresh look at a District Court's Rule 12(b)(6) dismissal.  *Mayer v. Belichick*, 605 F.3d 223, 229–30 (3d Cir. 2010).  To survive a motion to dismiss, the pleading "must contain sufficient factual allegations so as to state a facially plausible claim for relief."  *Id*. at 230.  "We must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint."  *Id*. at 229.

## III.    Discussion

### 1.  SAPRE's Procedural Due Process Claim

SAPRE claims that the City violated its procedural due process rights when it failed to provide a pre-deprivation hearing, stay the Cease Order according to the Zoning Code's procedures, and provide a "sufficiently prompt" post-deprivation hearing.  Appellant Br. at 28 (quoting *Fed. Deposit Ins. Corp. v. Mullen*, 486 U.S. 230, 241 (1988)).  Procedural due process claims face a two-part gateway inquiry: "(1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute 'due process of law.'"  *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (citation and quotation marks omitted).

Here, the District Court found that SAPRE has a protected property interest in its business, and we agree.  "[A] business is an established property right entitled to

6

protection under the Fourteenth Amendment." *College Sav. Bank v. Florida Prepaid Postsecondary Edu. Expense Bd.*, 131 F.3d 353, 361 (3d Cir. 1997).

If a plaintiff has a property interest and we deem it deserves protection, we review the procedures (that is, the process) constitutionally needed to assure protection and whether they were provided. Hence, we turn to the process that was due SAPRE. Once determined, we ask whether it occurred?

### a. SAPRE's Right to a Pre-Deprivation Hearing

"The fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (collecting Supreme Court cases illustrating this principle), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986) (internal quotations omitted). The District Court, relying on *DeBlasio v. Zoning Bd. of Adjustment for Twp. Of West Amwell*, 53 F.3d 592, 597 (3d Cir. 1995), and *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988), held that the City's Zoning Code provided sufficient post-deprivation protection for SAPRE's interests. But those cases are distinguishable from SAPRE's claims here. Unlike the plaintiffs in *DeBlasio* and *Bello*, SAPRE is not challenging the adequacy of the City's process for granting or revoking a zoning license, variance, or permit. Instead, it alleges the City impermissibly invoked its emergency powers to avoid the pre-deprivation hearing mandated by the City's procedures before revoking its already given license.

A pre-deprivation hearing is often required when the deprivation is "pursuant to some established state procedure and 'process' could be offered before any actual

7

deprivation took place." *Parratt*, 451 U.S. at 537–38 (collecting Supreme Court cases). Indeed, "absent the necessity of quick action by the State or the impracticality of providing any predeprivation process, a post-deprivation hearing . . . would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted).

Quick action comes into play when there is an emergency. *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412 (3d Cir. 2008). Invoking emergency procedures requires "competent evidence allowing the official[s] to reasonably believe that an emergency does in fact exist." *Id.* at 418 (citing *Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999)). When it does, the failure to provide a pre-deprivation hearing does not amount to constitutional harm. *Id.* at 419; *see also Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 300 (1981) (stating that "summary administrative action may be justified in emergency situations"). SAPRE alleges, and the Pennsylvania Court of Common Pleas agreed, that the City knew there was no evidence of an emergency when it invoked the Zoning Code's emergency provision to shut down Mother Fletcher's. We agree. Therefore, the emergency exception to pre-deprivation process does not apply here.

Nor does the "impracticality" exception to pre-deprivation process apply. *Parratt* tells us that a pre-deprivation hearing is not constitutionally required when the deprivation results from the "random and unauthorized" failure of state agents to follow established state procedure such that it would be impracticable or impossible for the state to provide pre-deprivation process. 451 U.S. at 541–43. In *Zinermon v. Burch*, the

8

Supreme Court provided a template for distinguishing cases where pre-deprivation process is required from those, such as *Parratt*, where it is not because the deprivation was unauthorized. 494 U.S. 113, 129 (1990).

Zinermon claimed that doctors and administrators at a state mental hospital had, without a hearing, deprived him of his liberty when they confined him under the state's voluntary admission procedure, even though they knew or should have known that his mental illness made him incapable of giving informed consent to his admission. *Id*. at 135–36. The Court agreed that pre-deprivation process was not impossible when the state had an established procedure for involuntary placement that the officials chose not to invoke. *Id.* at 136–37. Thus, the doctors had disregarded their duty to ensure that the proper procedures were followed. The Court explained, "it would indeed be strange to allow state officials to escape § 1983 liability for failing to provide constitutionally required procedural protections by assuming that those procedures would be futile because the same state officials would find a way to subvert them." *Id.* at 137–38.

The upshot is that where (1) the deprivation is predictable, (2) pre-deprivation process is possible, and (3) the charged state officials had the authority to deprive one of liberty or property, *Parratt* does not apply and a pre-deprivation hearing is constitutionally required. *Id* at 136–38.

Applying *Zinermon*'s three-factor test here, it is plausible that the City's decision to shutter Mother Fletcher's was not a random, unauthorized act by City employees. SAPRE's deprivation occurred at a predictable point in the government's process—when a decision is made whether to invoke the Code's standard or emergency procedures to

9

address a violation (keeping in mind here there was no confirmed violation, but at most the suspicion of a possible violation). And to repeat, there was no competent evidence of exigent circumstances. Thus pre-deprivation process was possible. In this context—the lack of exigent circumstances, and the Code's established pre-deprivation procedures for non-emergency violations—SAPRE meets *Zinermon*'s first two criteria to establish that pre-deprivation process was required.

At the motion-to-dismiss stage, it is also plausible that Mariani was authorized by the Zoning Code to decide whether to invoke emergency procedures. The Code directs "the Chief of the Bureau of Building Inspection or the appropriate Code Official" to determine reasonably whether an emergency is underway. Zoning Code § 924.05.B. On the night the City closed Mother Fletcher's, the Director of DPLI, Kennedy, instructed Mariani to inspect the business and to "close [it] if he discovered any dangerous life/safety issues." App. 96a. Given her title and the alleged facts, Kennedy may have been an appropriate "Code Official" with the authority to cause the deprivation, and her instructions to Mariani may have extended her authority to his action. Hence it is plausible that the Code delegated to Mariani the power and authority "to effect the very deprivation complained of here, . . . and also delegated to [him] the concomitant duty to initiate the procedural safeguards set up by [City] law to guard against unlawful [deprivations]." *Zinermon*, 494 U.S. at 138.

Further, the deployment of considerable City resources to shut down Mother Fletcher's is evidence of state action beyond a rogue employee's "unauthorized act." The platoon of police at a place with no commotion (in fact, no patrons)—there have been

10

smaller SWAT teams called in to curb violence—implies a coordinated effort to shut down a business despite the lack of exigent circumstances. In sum, the City "cannot escape § 1983 liability by characterizing [its employees'] conduct as a 'random, unauthorized' violation of [City] law which [it] was not in a position to predict or avert . . . ." *Id.*

Indeed, there is no competent evidence before us to show that Mariani undertook a random, unauthorized act or reasonably believed that an emergency was underway. Thus, the constitutionally required process—a pre-deprivation hearing—did not occur. We accordingly vacate the District Court's dismissal of SAPRE's due process claim for failing to provide pre-deprivation process as required by the Fourteenth Amendment and remand for further proceedings, including fact-finding regarding whether Mariani and Kennedy are "appropriate Code Official[s]".

### b. The City's Violation of Zoning Code Procedures

SAPRE next claims the City's violations of local laws—particularly its failure to follow § 932.02.G of the Zoning Code, which would have allowed the club to remain open during SAPRE's appeal before the Zoning Board—also violated its due process rights.

That the City violated the Code when it did not fulfill its obligations under § 932.02.G, however, does not prove a constitutional harm. True enough, the City should follow its law, but "to treat a violation of [the Zoning Code] as a violation of the Constitution is to make the federal government the enforcer of [local] law." *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988).

11

The District Court found that SAPRE "ha[d] not pled that it availed itself of state remedies, such as a mandamus action, to enforce its right to a stay under § 923.02.G in state court." App. 17a. We agree. Because SAPRE did not pursue all available post-deprivation remedies and never explained why these remedies were insufficient, we cannot hold that the available process for addressing SAPRE's continuing closure was inadequate. *See Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 139 (3d Cir. 2010).

c. SAPRE's Right to a "Sufficiently Prompt" Post-Deprivation Hearing

SAPRE also alleges that the Zoning Board violated its right to a "sufficiently prompt" post-deprivation hearing. Appellant Br. at 28 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. at 241). The Board waited 125 days from when SAPRE filed its appeal to hold a hearing and did not release its decision for an additional 237 days. As noted at oral argument before us, this delay caused SAPRE to lose its lease and its business for good.

Although SAPRE's post-deprivation process was drawn out and highly frustrating in light of the Zoning Code's requirement that decisions be issued within 45 days of a hearing, the Zoning Board's delay here was not a Fourteenth Amendment violation. As the District Court noted, we have held substantially equivalent delays in administrative proceedings do not violate due process. *See Ritter v. Cohen,* 797 F.2d 119, 124 (3d Cir. 1986) (holding a 20-month delay did not violate plaintiff's due process rights); *Fanti v. Weinstock*, 629 F. App'x 325, 331 (3d Cir. 2015) (holding a delay of over a year did not violate due process); *see also Givens v. U.S. R.R. Ret. Bd.*, 720 F.2d 196, 201 (D.C. Cir. 1983) (holding a 19-month delay did not violate plaintiff's due process rights).

12

SAPRE's successful appeal of the Cease Order in the Court of Common Pleas also demonstrates the adequacy of the City and State's post-deprivation procedures. The District Court correctly ruled that SAPRE's right to a "sufficiently prompt" post-deprivation hearing was not a constitutional violation.

2. SAPRE's Substantive Due Process Claim

The District Court correctly dismissed SAPRE's substantive due process claim. "Substantive due process protects citizens from arbitrary and irrational acts of government." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 692 (3d Cir. 1993) (citation omitted), *abrogated on other grounds by United Artists v. Twp of Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003). To prevail "a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (internal citation omitted).

Though no doubt SAPRE had a property interest in its business and the use and enjoyment of its property, what "shocks the conscience" is a high bar and "a matter of law for the courts to decide." *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)). The Supreme Court has described conscious-shocking behavior as "conduct intended to injure in some way unjustifiable by any government interest," *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998), and conduct "so 'brutal' and 'offensive' that it d[oes] not comport with traditional ideas of fair play and decency." *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957).

13

SAPRE contends that the September midnight raid by Mariani and his bevy of police officers, without "a single [reported] incident of violence, criminality, or ill-behavior," demonstrates an improper motive that "shocks the conscience." SAPRE Br. at 43.

Even viewing all allegations as true and drawing all reasonable inferences in SAPRE's favor, its substantive due process claim fails. "[M]erely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision." *Chainey*, 523 F.3d at 220 (citation omitted). Without "allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggested conscience-shocking behavior," SAPRE cannot make out a substantive due process claim. *Id.*[2] We agree with the District Court that SAPRE's allegations amount to an error in invoking the Code's emergency powers and a misallocation of police resources. Although these errors may establish a procedural due process violation, they do not meet the higher standard for conscience-shocking behavior.

We thus affirm the District Court's dismissal of SAPRE's substantive due process claim.

---

[2] SAPRE relies heavily on the Middle District of Pennsylvania decision *Rittenhouse Entertainment, Inc. v. City of Wilkes-Barre,* 861 F. Supp. 2d 470 (M.D. Pa. 2012). In that case, the night club owner alleged that the police's repeated harassment of his club was motivated by racial animus towards his patrons. The District Court held that if the allegations of harassment motivated by racial bias were true, they would "shock the conscience." *Id.* at 487. There are no allegations of racial prejudice in this case. Thus *Rittenhouse* does not make SAPRE's claim.

14

### 3. SAPRE's Equal Protection Claim

The District Court also correctly dismissed SAPRE's claim that the City's decision to close its business while allowing other businesses—that did not serve food despite their CO classification as a "Restaurant"—to continue to operate violates its constitutional right to be treated equally. SAPRE is not a member of a protected class; as such, it brings its claim as a class of one. To prove a successful equal protection claim brought by a class of one, SAPRE must show that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for that difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

SAPRE pled that it is similarly situated to two businesses—Howl at the Moon and Jimmy D's—because, like Mother Fletcher's, they are classified as "Restaurants (general)" under the Zoning Code and do not serve food. Both establishments operate as bars, serving a clientele over the age of 21, while Mother Fletcher's caters to underage clientele and does not serve alcohol. These differences are significant, and thus form a rational basis for the City to treat Mother Fletcher's differently.

SAPRE's unique clientele is particularly significant; we have long recognized local government's interest in protecting underage persons from harm. *See generally Free Speech Coalition, Inc v. Att'y Gen.*, 677 F.3d 519, 532 (3d Cir. 2012); *Miller v. City of Philadelphia*, 174 F.3d 368, 373 (3d Cir. 1999). A dance club for under-21 youth operating at night presents different safety concerns than a bar serving adults.

In this context, we affirm the District Court's dismissal of SAPRE's equal protection claim.

15

4. Mariani's Qualified Immunity Defense

Mariani, the only defendant SAPRE sued in an individual capacity, contends that the claims against him should be dismissed, as he is protected by qualified immunity. It "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 Sup. Ct. 1148, 1152 (2018) (citation and quotation marks omitted); *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (same). We ask "whether the plaintiff sufficiently alleged the violation of a constitutional right," and "whether the right was 'clearly established' at the time of the official's conduct." *Id.* at 83 (internal citation and quotation marks omitted).

Because we hold that SAPRE has plausibly alleged a Fourteenth Amendment procedural due process violation, the first prong is satisfied. But it cannot show that there is a case that "clearly establishes" that procedural right. While we "do[ ] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal citation and quotation marks omitted). If there is no Supreme Court case on point, "it may be possible that a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity." *United States v. Baroni*, 909 F.3d 550, 586 (3d Cir. 2018) (quoting *L.R. v. School District of Philadelphia*, 836 F.3d 235, 248 (3d Cir. 2016) (quotation marks omitted)).

16

There are only a handful of circuit court cases with facts arguably similar to SAPRE's procedural due process claim. *See Elsmere*, 542 F.3d 412; *Catanzaro*, 188 F.3d 56; *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996); *Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994). In *Armendariz*, the Ninth Circuit found that the City of San Bernardino violated property owners' procedural due process rights when it closed a housing complex without pre-deprivation notice even though the City knew that no exigent circumstances warranted that action. But a single case in another circuit cannot provide sufficient notice to overcome qualified immunity. In *Elsmere*, *Harris*, and *Catanzaro*, we and other circuit courts held that the Government had not acted arbitrarily in evoking its emergency powers, 532 F.3d at 423; 188 F.3d at 62–63; 20 F.3d at 1403–04. Hence these cases also do not provide officials with sufficient notice that their conduct violated constitutional rights as necessary to rebut a qualified immunity defense.

Therefore, we affirm the District Court's grant of qualified immunity and dismissal of all claims against Mariani.

\* \* \* \* \*

Procedural due process is not a blank check to be cashed any time a government official acts outside the law. Here, SAPRE alleges that the City deliberately misapplied its ordinance and used its emergency procedures to close a business without any evidence of exigent circumstances.

Without further fact-finding, we cannot determine whether Mother Fletcher's closure was ordered by an official with discretion to invoke emergency powers under the City's Zoning Code or if Mariani undertook a random, unauthorized act for which only a

17

post-deprivation remedy could be offered.  The former would be an arbitrary use of the City's police power and a constitutional harm.  The latter would not.  At this stage of the litigation, SAPRE has stated a plausible procedural due process claim based on its right to a pre-deprivation hearing.  Thus, we vacate the District Court's dismissal of that claim and remand the case for further proceedings.  In all other respects, we affirm.